Andrew A. ILLES, Plaintiff,

v.

The CITY OF WILTON MANORS, a municipal corporation, and the Honorable Jane Carroll, Supervisor of Elections of Broward County, Florida, Defendants.

No. 86–6851–CIV.

United States District Court, S.D. Florida.

March 3, 1987.

Andrew A. Illes, Wilton Manors, Fla., pro se.

Henry B. Carpenter, Hatch & Marter, Samuel Goren, Josias & Goren, George Richardson, Jr., Ft. Lauderdale, Fla., for defendants.

## ORDER DENYING MOTION TO AMEND ORDER AND GRANTING MOTION TO TAX COSTS AND ATTORNEY'S FEES

JAMES LAWRENCE KING, Chief Judge.

THIS CAUSE arises before the Court upon the Plaintiff's motion to amend Order and request for new trial and Defendant Carroll's motion to tax costs and attorney's fees. As to Plaintiff's request for oral argument, this Court notes that in the reply to Defendant's response to the motion to amend the order that Plaintiff withdrew his request for oral argument.

The Plaintiff requests this Court to alter its Order of November 10, 1987. In support of this request, the Plaintiff (hereafter Illes) argues that the November 10 Order does not correctly reflect the Court's oral ruling and guidelines, does not carry out the Court's stated goal of preserving the status quo of the parties, and violates due process because it operates as a de facto injunction. In response, the Defendants argue that Illes has failed to reveal any new or additional information and that Illes is estopped from challenging an order to which Illes acquiesced when orally announced in open court.

Andrew Illes filed a civil complaint with this Court on October 24, 1986, asking this Court to invoke original jurisdiction and seeking relief for deprivation of his constitutional rights. The gist of Ille's complaint is that he was being deprived of his constitutional right to have a proposed referendum to the City of Wilton Manor's charter placed on the ballot of the upcoming November 4, 1986 election. He alleged that the Defendants the City of Wilton Manors (hereafter City) and Broward Coun-

ty Supervisor of Elections Jane Carroll (hereafter Carroll), had acted to unlawfully deprive him of his right to have the proposed amendments placed on the ballot. On October 29, 1986, Illes filed a verified motion for temporary restraining order, whereby he requested this Court to order the referendum question to be placed on the November 4, 1986 ballot. An emergency hearing was promptly scheduled on the first available date, Saturday, November 1, 1986, to hear oral argument on Illes motion for temporary restraining order. Counsel for Carroll and the City appeared at the hearing. Both Defendants appeared at the hearing without waiving any arguments they may have as to proper service or jurisdiction.

The Court also made it clear that by calling an emergency hearing it was not ruling on the issues of jurisdiction, but rather, was providing a forum to discuss possible resolution of the immediate issue of whether the referendum question *could* be placed on the November 4th general election ballot. From the onset, this Court made it absolutely clear to Illes that it respected the state court's ability to resolve issues of state concern properly brought before the state court and that it did not interfere with the matters before a state court absent the most compelling circumstances warranting such intrusion. The Court indicated that it had studied the authorities cited by Illes in support of a finding of federal subject matter jurisdiction, and at first impression, it did not appear that they were applicable to the circumstances of this dispute. Thus, from the start of the hearing, Illes was made aware of the Court's great reluctance to address the merits of the dispute and intervene in a pending state court proceeding involving issues of state concern.

The Court elected to proceed with the hearing in an attempt to determine if the relief requested by Illes, to wit, placing the proposed referendum question on the November 4th ballot, was possible, and to provide a forum to facilitate potential resolution of the dispute by the parties themselves. After a lengthy hearing, the Court orally summarized the progress made and its holdings, and requested the parties submit an order reflecting its remarks. An order was submitted to the Court and was signed on November 10, 1986, some ten days after the hearing. At the time the order was submitted, Illes had not filed a proposed order on his own behalf. The particular testimony proffered at the hearing, representations made by the Court and counsel, and agreements reached by the parties will be set forth as they relate to the particular arguments raised by Illes and the Defendants addressed below.

█ First, Illes argues the Order should be set aside because he was not provided with a copy prior to the Defendant submitting its proposed order. While the Court suggested that the parties work together in preparing a proposed order, it did not require the proposed order be jointly submitted. In fact, the Court said if the parties could not reach agreement they could submit separate proposed orders. The Defendants did not represent to this Court that the proposed order they submitted was agreed to by Illes, nor did they indicate the proposed order reflected anyone's imput other than the submitting party. The Court was not hoodwinked into believing that the proposed order was agreed to by Illes. Rather, the Court independantly reviewed the proposed order and determined that it did comport with the Court's oral ruling. Accordingly, Illes was in no way prejudiced by his failure to submit a proposed order on his behalf. Nor was Illes prejudiced by not being served with the proposed order prior to its submission to the Court, as the Court did not order the parties to serve proposed orders upon each other prior to submission of the orders to the Court for consideration.

A related argument raised by Illes is that the Order does not accurately reflect the Court's oral ruling and guidelines. In making this argument, Illes raises a serious challenge to the ethics of Defendants' counsel that this Court takes very seriously. Consequently, the Court has conducted

a careful review of the November 1, 1986 hearing and finds that it is Illes representations of the events transpiring at the hearing and the Court's oral rulings that are inaccurate.

■ For example, Illes argues that the Court's finding that placing the referendum question on the November 4th ballot was a practical impossibility is erroneous and not supported by the testimony proffered at the hearing. The gist of the testimony proffered by Carroll's attorney, on her behalf, is that placing the referendum question on the November 4th ballot was a practical impossibility. Specifically, Attorney Goren stated, "In discussing with my client, we're talking about a logical impossibility on this point." Attorney Goren's statement of impossibility was in direct response to Illes argument to the Court at the hearing that no one had specifically stated that it was impossible. The Court is confounded as to how Illes could now represent to this Court that, after lengthy discussion on the point of practical impossibility, an Order reflecting such testimony is erroneous and not supported by the evidence proffered. Accordingly, this Court found "there to exist vast and numerous practical and strategic problems which impede and bar JANE CARROLL, the Supervisor of Elections of Broward County, from properly and timely placing the initiative referendum questions on the November 4, 1986 ballot." Such a finding was proper and supported by the representations of counsel and testimony proffered.

■ Illes also argues that the November 10th Order does not comport with the oral representations made by the Court as to preserving the status quo of the parties. The meaning intended by the Court's use of the term "status quo" was made clear to all parties at the hearing and the Order adopting such language is consistent with the Court's interpretation. A primary concern of the Court was preventing the Plaintiff, in the event the state court found the referendum question constitutional, from having to recollect signatures in order to place the referendum on the ballot in a special election. Accordingly, the Court employed the term status quo to indicate that the Plaintiff would not have to recomply with the statutory requirements to initiate a referendum in the event the proposed referendum was ordered to be placed on a ballot. This point was reiterated several times at the hearing and understood by all parties. Illes convoluted discourse on the alleged defect in the November 10th Order regarding protection of the status quo flies in the face of his oral agreements to the Court's use of the term status quo in an attempt to protect Illes from having to recollect signatures. In this respect, the Court must agree with the Defendant's position that Illes has taken a particular phrase out of context and asserted a ridiculous interpretation of the Court's intentions to protect Illes from the burden of recollecting signatures. Accordingly, Illes argument that the Order does not preserve the status quo, according to his "universal definition", is without merit and contradictory to the position taken by Illes at the hearing.

The most serious issue raised by Illes and counsel for the Defendant involves the current status of the state court proceeding wherein the parties were directed to proceed on the merits of the case. Illes informs the Court that the pending declaratory judgment count is moot and therefore he voluntarily dismissed the state court action. Such action is in direct contravention with the parties agreement and the Court's express holding that the issue should proceed on the merits in state court.

If the declaratory judgment action as to the November 4th election is, in fact, moot, the Plaintiff could amend his complaint to state a viable state law claim to determine whether the referendum question satisfied all constitutional and statutory requirements and should be placed on the ballot of a special election within a reasonable time after the state court determination. This Court specifically addressed this possibility and stated that Illes could amend or refile his action in state court. The Court reiterated that the state court was the proper

forum to address the legal challenges to placing the referendum question on the ballot, particularly when the state judicial process had already been initiated. Despite the clear determination of the Court to abstain from the proceedings and allow the state court case to proceed on the merits, Illes voluntarily dismissed his action, and again requests this Court to take jurisdiction and determine the underlying merits of the case.

■ Mr. Illes conduct amounts to deliberate disregard of an Order of this Court. Illes fully participated in the emergency hearing and acquiesced to the Court's oral holdings, which are accurately reflected in the written order of November 10th. In fact, at the close of the hearing, Illes characterized it as fair and equitable. In dismissing the state court case and challenging the written Order, Illes directly contradicts his position at the hearing and the Court's ruling of abstention. The Defendant has characterized Illes' conduct as judicial forum shopping, a characterization with which this Court can only agree.

Such deliberate disregard of an Order, and the filing of a legally unreasonable motion to alter or amend that Order, is of grave concern to this Court and warrants the imposition of sanctions under Rule 11 of the Federal Rules of Civil Procedure.

Defendant Carroll filed a motion requesting an Order taxing costs and attorney's fees against Illes, pursuant to Rule 11. "Rule 11 sanctions shall be assessed if the paper filed in district court and signed by an attorney or an *unrepresented party* is frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith." *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831 (9th Cir.1986) (emphasis added). After giving due consideration to the circumstances of the case, if a court finds that a complaint or other filing violates Rule 11, imposition of some sanctions is mandatory. *Filippini v. Austin,* 106 F.R.D. 425 (C.D. Cal.1985); *Westmorland v. CBS, Inc.,* 770 F.2d 1168 (D.C.Cir.1985); *Pawlowske v. Crystler Corp.,* 623 F.Supp. 569, 572 (D.C.

Ill.1985) (where the Court found the language of Rule 11 required imposition of sanctions mandatory where the rule has been violated).

The circumstances of this case mandate the imposition of Rule 11 sanctions, as requested by Defendant Carroll. First, the Plaintiff disobeyed the Court's instructions to proceed on the merits in state court of competent jurisdiction, after expressly representing to the Court his agreement with said instructions. Secondly, the Motion to alter or amend the November 10th Order is legally unreasonable and without factual foundation. Illes had a proper forum in which to properly challenge the city's action, indeed he had been vigorously litigating in that forum prior to filing his federal complaint. Yet he choose to abandon the proper forum to address the state law concerns he raises, and instead files successive requests for relief before this Court, causing all parties involved to expend substantial amounts of time and expense to repeatedly respond to his attempts to find a sympathetic ear. Such conduct is a misuse of the judicial process and warrants the imposition of sanctions in the form of attorney's fees and costs. Accordingly, Defendant Carroll is requested to submit a showing of costs and reasonable attorney's fees incurred in the above styled action subsequent to the emergency hearing held on November 1, 1986.

Accordingly, after a careful review of the record, and the Court otherwise being fully advised in the premises, it is:

ORDERED and ADJUDGED that the Plaintiff's motion to amend the November 10, 1986 Order be, and it is hereby, DENIED. The Defendant, Carroll's, motion to tax costs and attorney's fees, pursuant to Rule 11, be, and it is hereby, GRANTED. Defendant Carroll shall have twenty days in which to submit a showing of costs and reasonable attorney's fees incurred during the above specified time period.

DONE and ORDERED in chambers at the United States Courthouse, Federal

Courthouse Square, Miami, Florida, this 3rd day of March, 1987.